IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TIMOTHY HADDON,**

    Plaintiff,

  v.

**C R BARD INCORPORATED;** and **BARD PERIPHERAL VASCULAR INCORORATED,**

    Defendants.

No. 3:19-cv-01454-MO

OPINION AND ORDER

**MOSMAN, J.,**

  Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") have moved for summary judgment on the issue of punitive damages. At oral argument on June 24, 2021, I ruled on most of the issues presented in Bard's Motion for Summary Judgment [ECF 43], but I ordered supplemental briefing on the punitive-damages challenge. *See* Minutes of Proceedings [ECF 68]. The parties have now completed briefing. For the following reasons, I GRANT Bard's motion on this point.

## DISCUSSION

  In a similar case before me, I determined that Arizona law should apply to the issue of punitive damages, and my reasoning in that case applies equally here. *See Peterson v. C R Bard Inc.*, No. 3:19-cv-01701-MO, 2021 WL 799305, at *5–8 (D. Or. Mar. 2, 2021). Under Arizona

1 – OPINION AND ORDER

law, manufacturers like Bard, so long as they comply with government regulations, generally are not liable for punitive damages. Ariz. Rev. Stat. § 12-689(A); *see also Peterson*, 2021 WL 799305, at *7.

Plaintiff Timothy Haddon argues that Bard should be liable for punitive damages, despite the general bar on such damages, for two reasons. First, Mr. Haddon argues that the statute, which was enacted several years after he received his filter implant, does not apply retroactively. Second, he argues that a statutory exception saves his claim. I discuss his two arguments in turn.

## I.     Retroactivity

Mr. Haddon received his filter in 2007, five years *before* Arizona enacted the statute at issue. He filed this lawsuit in 2019, seven years *after* enactment. Mr. Haddon notes that the Arizona statute lacks a retroactivity provision and thus does not apply to the facts of his case. Pl.'s Resp. [ECF 53] at 27. For the reasons discussed at oral argument, and restated below, I reject this argument.

Under Arizona law, the operative date for a retroactivity analysis is the date the lawsuit was filed. "In Arizona it is conclusively settled that laws are not retroactive simply because they relate to past events." *Hall v. A.N.R. Freight Sys., Inc.*, 717 P.2d 434, 443 (Ariz. 1986). It is true that substantive rights, which include rights affecting the measure of damages, may not be retroactively impaired once vested. *Id.* at 442–44. But those rights do not vest until a lawsuit has been filed. *Id.* Arizona courts have "consistently defined statutory changes as retroactive only when they affect cases already in litigation." *Id.* at 445. For this reason, courts have rejected arguments like Mr. Haddon's. *See McMahill v. C R Bard Inc.*, No. CV 2017-000927, 2019 WL 4899720, at *4 (Ariz. Super. July 23, 2019) ("[P]laintiff's rights did not vest until he filed for litigation."); *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2020 WL 3288026, at *2

n.1 (M.D. Fla June 18, 2020) (same); *cf. Triant v. Am. Med. Sys. Inc.*, No. CV-12-00450-PHX-DGC, 2020 WL 4049844, at *14–15 (D. Ariz. July 20, 2020) (finding the statutory bar on punitive damages did *not* apply because the case was filed *before* the statute became effective).

Mr. Haddon filed this lawsuit years after the effective date of Ariz. Rev. Stat. § 12-689(A). Thus, I reject Mr. Haddon's retroactivity argument.[1]

## II. Statutory Exception

Mr. Haddon argues that under an exception to the rule, his claim for punitive damages survives. Under Ariz. Rev. Stat. § 12-689(B)(4), the bar on punitive damages

> does not apply if the claimant establishes that the manufacturer . . . **at any time before the activity or event that allegedly caused the harm**, did any of the following:
>
> . . .
>
> 4. After the product was sold or the service was provided, a government agency found that the manufacturer . . . **knowingly violated applicable regulations** requiring the reporting to that government agency of risks of harm and **the unreported information was material and relevant** to the harm that the claimant allegedly suffered.

(emphases added). In his supplemental brief, Mr. Haddon identifies an FDA warning letter issued to Bard in 2015 that possibly satisfies the exception. Pl.'s Suppl. Br. [ECF 73] at 5. I disagree for three reasons.

---

[1] Mr. Haddon also argues, in a footnote containing no legal support or reasoning, that the Arizona statute violates several provisions of the Arizona Constitution. It is unclear whether Mr. Haddon's state constitutional arguments depend on the statute being retroactively applied. If they do, then they fail because the statute is not being so applied. In any event, Mr. Haddon did not support his argument in his response brief, at oral argument, or in supplemental briefing. I therefore decline to address it. *Cf. Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (internal quotation marks and citation omitted)).

3 – OPINION AND ORDER

First, the plain language of the exception delineates a timeframe in which a government finding is relevant: *after* the product was sold but *before* the activity or event that allegedly caused the harm. This case is proceeding to trial on two theories: (1) design defect (both on a strict liability and a negligence theory), and (2) fraudulent concealment of relevant information prior to implantation. Those theories depend on Bard's conduct prior to the implantation of Mr. Haddon's filter. *See* Tr. [ECF 69] at 40–43 (discussing Mr. Haddon's theory of fraudulent concealment, which relates to Bard's representations of complication rates *prior* to implantation); Pl.'s Resp. [ECF 53] at 24–25 (same). Thus, for the exception to apply in this case, a government agency would have had to have found that Bard knowingly violated applicable reporting regulations sometime after the filter hit the market but before Mr. Haddon received one in 2007. The 2015 warning letter was issued eight years too late.

Second, the plain language of the exception requires a finding of a *knowing* violation of a reporting regulation. The 2015 letter contains no such finding. *See* Taylor T. Daly Decl. [ECF 71] Ex. A. This makes intuitive sense: the letter was a *warning*, putting Bard on notice. A subsequent finding of the same violation may rise to the level of a *knowing* violation. *See id.* Ex. A, at 10 ("Your firm should take prompt action to correct the violations addressed in this letter. Failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice."). But no subsequent finding is in the record before me.

Third, the plain language of the exception requires any violation to be material and relevant to the harm allegedly suffered. Mr. Haddon admits that "the complaints referenced in the Warning Letter did not involve a G2 filter, like the one implanted into Mr. Haddon." Pl.'s Suppl. Br. [ECF 73] at 5. He admits that "the investigation of Bard's facility occurred in 2015, a period when the G2 filter was no longer being sold." *Id.* Nevertheless, he claims that "[t]here is

4 – OPINION AND ORDER

no indication the reporting practices by Bard were any different at the time of the G2's manufacture and sale." *Id.* at 6.

Bard's argument on this point runs headlong into the statute's text. Reporting violations as to entirely different products—violations that occurred after the relevant product was pulled from the market—are not "material and relevant to the harm that the claimant allegedly suffered." Ariz. Rev. Stat. § 12-689(B)(4). Mr. Haddon attempts to rely on the speculative inference that Bard's violations in 2015 prove that the company was also violating reporting regulations before then. But this inference falls short of the statute's requirement of a *government finding* of a knowing violation. An after-the-fact, judicial finding of knowing violations that no government agency ever uncovered will not do.

In short, the record contains no evidence of a government finding that satisfies the express provisions of the statutory exception, and Mr. Haddon's argument that the exception applies must fail.

## CONCLUSION

For the reasons stated on the record and in this opinion, Bard's Motion for Summary Judgment [ECF 43] is GRANTED in part and DENIED in part. This case shall proceed to trial on Counts III (Strict Products Liability—Design Defect), IV (Negligence—Design), and XIII (Fraudulent Concealment). Punitive damages are unavailable as a matter of law.

IT IS SO ORDERED.

DATED this __23__ day of July, 2021.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge